Rosa, Monserrate Rafaela, Rafaela Monserrate, Eduardo y Soledad Pérez Casalduc, como herederos de Eduardo Pérez Rivera, demandantes, contrademandados y apelados, *v*. Sucn. de Jaime Oliver Mayol, compuesta de sus hijos Francisco, Antonia, Manuela y Margarita Oliver Culvejé y Francisco y Margarita Oliver López, demandados, contrademandantes y apelantes.

Núm. 7484.—*Sometido:* Mayo 24, 1938.  *Resuelto:* Junio 1, 1939.

*M. Marcos Morales,* abogado de los apelantes; *E. Pérez Casalduc* y *M. García González,* abogados de los apelados.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

Los demandados apelan de una sentencia adversa en una acción reivindicatoria.

En enero de 1899 Eusebio Pérez Castillo hipotecó una plantación de café conocida por Gripiñas para garantizar el pago de 40,207.67 pesos provinciales. Se decía que éste era el saldo adeudado a Jaime Oliver de una cuenta liquidada.

Pérez Castillo murió en julio. Uno de sus ocho hijos, Eduardo Pérez Rivera, falleció en septiembre. Los demandantes eran los hijos menores de Eduardo Pérez. En enero de 1900 se constituyó un consejo de familia. Éste nombró un tutor y un protutor.

Monserrate Rivera viuda de Pérez Castillo falleció en junio de 1900. Eusebio Pérez Castillo y Monserrate Rivera en sus respectivos testamentos designaron albaceas y contadores partidores.

En octubre de 1900 los herederos mayores de edad y el tutor, actuando este último en representación de los menores, reconocieron adeudar a Oliver la suma de $5,126.82. Para garantizar el pago otorgaron una segunda hipoteca sobre la hacienda Gripiñas. Un acuerdo del consejo de familia confirió al tutor poderes generales, pero sin facultad específica para lo acordado. Contrario a lo manifestado en la hipoteca en lo atinente al importe de la deuda que allí se reconocía, Jaime Oliver, por su apoderado Francisco Oliver, en un documento privado de igual fecha, acusó recibo de 2,225 pesos provinciales como la suma adeudada por los herederos de Pérez en una cuenta corriente que se decía haber sido pagada por la hipoteca.

Al mismo tiempo los herederos mayores de edad y el tutor, de conformidad con los poderes generales conferídosle, pero sin autoridad específica, por escritura notarial cedieron y traspasaron a Jaime Oliver toda la cosecha de café de 1901 de la finca Gripiñas. El producto, luego de deducir ciertos gastos, debía abonarse a cuenta de la deuda en la forma que se hacía constar en la cláusula sexta del documento.

En febrero de 1901 Oliver instó demanda en la Corte Federal contra los herederos de Pérez en ejecución de la hipoteca que pesaba sobre la hacienda Gripiñas, ascendente a $24,124.60 y en ejecución de una hipoteca por $22,074.60 que pesaba sobre otras fincas, otorgadas ambas por Eusebio Pérez. Este pleito fué desistido meses más tarde.

En mayo de 1901 los herederos mayores de edad en una escritura notarial hicieron constar que el total de la deuda de Oliver ascendía a $60,000; que de esta suma, distribuída entre los herederos, los mayores de edad respondían de $52,500, o sea $7,500 cada uno, y los menores de los $7,500 restantes. En la misma escritura los herederos mayores de edad traspasaron a Oliver su condominio indiviso de 7/8 partes de la finca en pago de $52,500 como su participación en la deuda, a condición de que tal pago se acreditara así: $16,624.60 a la primera hipoteca sobre la hacienda Gripiñas por $24,124.60; $5,126.82 en pago total de la segunda hipoteca que pesaba sobre la misma finca; $22,074.60 en pago total de una hipoteca que gravaba otras dos fincas, Yunes y Limón, y los $8,673.98 restantes en pago de los intereses vencidos sobre las tres hipotecas, más las costas incurridas por Oliver, y el saldo adeudádole como resultado de su administración de la finca Gripiñas. Oliver convino, entre otras cosas, en no reclamar de los herederos menores de edad más de los $7,500 restantes adeudados sobre la primera hipoteca, sin intereses, siempre que la deuda le fuera pagada dentro del término de dos meses. De la escritura no se desprendía que toda la finca había sido tasada por peritos con intervención de los menores. La escritura sí contenía una cláusula posterior en que se decía que el tutor (que anteriormente no había sido mencionado como compareciente en la escritura) se unía en ella. Invocando las facultades conferídasle por el consejo de familia a fin de evitar perjuicios y con el propósito de facilitar el arreglo de un pleito entre Oliver y los menores, el tutor convino, a nombre y en representación de los menores, en que su octava parte indivisa en la hacienda Gripiñas sirviera de garantía a los $7,500 que aún se adeudaban a Oliver. Se insertó un párrafo relativo al poder general para celebrar transacciones o arreglos amistosos, pero sin autorización específica para el acto llevado a cabo por el tutor. Nada había que demostrara la autorización judicial o la aprobación del convenio, en lo que a los menores se refería. En una

escritura de igual fecha, Jaime Oliver, representado por su hijo y apoderado Francisco Oliver, se obligó a otorgar en favor de la Sucesión Pérez, o de la persona o personas que ésta designara, la escritura o escrituras necesarias para transferirle los tres créditos hipotecarios (el primero por tres mil pesos provinciales, el segundo por cinco mil pesos provinciales y el tercero por $1,400 moneda americana) y a traspasarle una finca rústica de 55 ó 57 cuerdas en el barrio Jayuya Arriba. En esta escritura Oliver admitía haber recibido de los herederos la suma de $1,500 oro americano en pago del precio de la finca rústica, y el pago anterior por los herederos del importe total de las tres hipotecas. Manifestaba que su obligación surgió de la transacción celebrada en dicho día con la Sucesión Pérez; pero que los documentos necesarios no podían ser otorgados inmediatamente. En esta escritura—de la cual no se hizo mención en el documento a virtud del cual se adjudicaron las 7/8 partes de la finca Gripiñas a Oliver y se reconocía la deuda de $60,000—los menores no comparecieron como partícipes ni aceptando su parte de los créditos hipotecarios ni de la finca descrita en ella que Oliver se comprometía a traspasar por el precio ya recibido.

En una escritura fechada el 13 de junio de 1901 en que el tutor no compareció, Julio Grau (como representante de los herederos mayores de edad) y Jaime Oliver (representado por Juan Esteva) hicieron constar que existía un error en la liquidación de la cuenta, toda vez que el importe de la deuda era $70,000 en vez de $60,000 y que por consiguiente la adjudicación de las participaciones indivisas de la finca Gripiñas hecha a Oliver en la escritura de mayo 10, 1901, debía considerarse como efectuada por dicha suma.

De una escritura otorgada el 15 de junio de 1901 se desprende que el tutor, a nombre de los demandantes, adjudicó a Jaime Oliver (representado por su apoderado Juan Esteva) la octava parte indivisa reservada a los menores en la escritura de mayo 10, 1901, participación sobre la cual el tutor había reconocido la existencia de una hipoteca en favor de

Oliver. Se expresaba que tal adjudicación se hacía después de haberse efectuado una subasta de dicho condominio indiviso, autorizada y celebrada por el consejo de familia según actas relacionadas. Se decía que Oliver había sido el único postor y que había ofrecido $7,500 (importe de la hipoteca) para abonar y saldar la cuenta a su favor, como debida por los menores.

Por una escritura de fecha 8 de octubre de 1902 los herederos mayores de edad y el tutor, hacían constar que—luego de un detenido examen para determinar si los créditos y la finca que Oliver en la escritura de mayo 10, 1901, se había comprometido a traspasar, pertenecían a la sucesión Pérez o a otras personas—ellos se habían convencido de que la finca pertenecía a Amador Dávila Villanueva y los tres créditos hipotecarios a Eduardo Artáu, en vez de a la sucesión. Los herederos mayores de edad y el tutor entonces autorizaron a Dávila y a Artáu para que exigieran de Jaime Oliver dichos bienes y a Oliver para que otorgara a favor de Dávila y de Artáu una escritura de dicha finca y de los créditos hipotecarios.

Por escritura de febrero 20, 1903, Oliver traspasó a Eduardo Artáu dos de los créditos hipotecarios por el importe total ($3,200) y parte del otro crédito ($2,300) reteniendo $700 sin explicación alguna y sin la comparecencia o consentimiento de los herederos mayores o menores de edad.

En una escritura de 28 de julio de 1910 Eduardo Artáu, como un acto de liberalidad y para demostrar su afecto a los menores, les traspasó dos casas en el pueblo de Utuado valoradas en $2,500. El tutor compareció en esa escritura en representación de los menores. En otra escritura fechada el 13 de diciembre de 1912, Artáu y el tutor se referían a un convenio que se decía haberse celebrado en julio de 1910 sobre la venta de las dos casas, y hacían constar que el precio de las mismas se había pagado para aquella fecha. Entonces Artáu traspasaba a los menores las dos casas en pago de la suma que se decía habérsele entregado en 1910.

Oliver murió en España el 14 de enero de 1919 bajo testamento. Al hacerse la partición de sus bienes, la finca Gripiñas fué adjudicada a sus cuatro hijos Francisco, Margarita, Manuel y Antonia Oliver Cuveljé, aquí demandados, en las siguientes proporciones: 2/5 al primero y 1/5 a cada uno de los demás.

En una declaración jurada suscrita ante un notario el 26 de septiembre de 1926 Eduardo Artáu decía, substancialmente, que había recibido los créditos hipotecarios de Oliver, de conformidad con un entendido celebrado con la Sucesión Pérez al efecto de que él debía liquidarlos, cobrar cierta suma que se le adeudaba a su hermana y entregar el saldo (ascendente a unos $4,000), a los menores, representados por su tutor; que él había entregado parte en efectivo, $1,200 en un pagaré que satisfizo en 1913, y el saldo mediante adjudicación a dichos menores de dos casas que le habían pertenecido.

Por escritura de marzo 20, 1902, Eduardo Artáu aceptó del tutor de dichos menores una cesión de derechos en pago total de cuatro pagarés que le habían sido endosados por los tomadores, uno de los cuales era su hermana.

Otros documentos, borderós y recibos relativos a hechos esenciales fueron admitidos en evidencia. Hubo también prueba sobre las alegaciones de la demanda, sobre la contestación y contrademanda, y declaraciones periciales en torno al valor de la propiedad y costo de cultivo y sobre las sumas producidas durante los períodos de tiempo envueltos.

La relación de hechos que antecede ha sido tomada de las conclusiones que aparecen en una opinión y sentencia escrita en 65 páginas de papel legal y en la cual el juez de distrito resolvió que en lo que a los menores se refería el acuerdo de mayo 10 de 1901 (que consideraba como una división de la finca Gripiñas) y el convenio de junio 15, 1901, eran nulos de toda nulidad.

Sus razones fueron: Que no había habido procedimiento de testamentaría ni liquidación de la herencia con anteriori-

dad al momento en que el consejo de familia autorizó la adjudicación de bienes pertenecientes a los menores y con prioridad a la adjudicación de tales bienes por el tutor; que aún si tales acuerdos no fueron enteramente nulos por no existir un procedimiento anterior de testamentaría, lo fueron enteramente nulos debido a la liquidación de las deudas y a la partición y adjudicación de bienes sin el consentimiento expreso del tutor, sin autorización específica para la celebración de tal convenio y sin que hubiera aprobación judicial de la partición, y porque el acuerdo descansaba en premisas falsas y simuladas que demostraban un entendido entre los herederos mayores de edad, el tutor y algunos de los miembros del consejo de familia y Oliver, con el fin de facilitar la adquisición de la hacienda Gripiñas por parte de Oliver en perjuicio manifiesto de los intereses de los menores.

La escritura de mayo 10, 1901, no fué de partición, sino la enajenación de un condominio indiviso, o de siete condominios indivisos, en la finca Gripiñas. No hubo partición de dicha finca ni de la herencia.

El tutor había sido autorizado por el consejo de familia para celebrar transacciones y arreglos amistosos con todos o con algunos de los acreedores de los finados Pérez Castillo y Eduardo Pérez Rivera, estipulando plazos, intereses con las prórrogas que se le concedan, firmando al efecto pagarés y todo género de obligaciones, incluso hipotecas de las fincas de cualquier clase que constituyan el capital yacente del señor Pérez Castillo y su consorte doña Monserrate Rivera, así como de los cónyuges Eduardo Pérez Rivera y Rosa Casalduc Roig. Podría admitirse que el tutor debió haber obtenido una autorización más específica antes de convenir en la liquidación y distribución de las deudas y en la cancelación de las hipotecas que pesaban sobre la finca Gripiñas y sobre otras fincas, en lo que a la participación indivisa traspasada por los herederos mayores de edad se refería, y antes de convenir en que el condominio indiviso de los menores en la hacienda Gripiñas, que ya estaba sujeto a hipotecas previa-

mente otorgadas, sirviera de única garantía a los $7,500. Podría igualmente admitirse que por falta de autoridad más específica los herederos menores de edad no quedaron obligados por los términos del contrato al tiempo de su ejecución. De ello no se desprende que el contrato fuera enteramente nulo. Contenía una cláusula al efecto de que el tutor para aquel entonces estaba tomando los pasos necesarios con el propósito de que los menores de edad pagaran los $7,500.

De la escritura otorgada el 15 de junio se desprende que el 7 de mayo, o sea tres días antes de haber los herederos mayores de edad hecho la enajenación, un consejo de familia que tenía conocimiento del acuerdo a que ya habían llegado los herederos mayores de edad y Oliver, autorizó la venta del octavo indiviso de los menores en pública subasta por un precio mínimo de $7,500. De esa escritura también se desprende que el consejo de familia, teniendo presente el procedimiento ejecutivo que se hallaba pendiente en la Corte Federal y el acuerdo a que ya habían llegado los herederos mayores de edad y Oliver, resolvió que una venta por un precio mínimo de $7,500 resultaría en provecho de los menores. De esa escritura también se desprende que Oliver fué el único postor en la subasta, que ofreció por la participación indivisa de los menores la suma de $7,500 como saldo en descubierto de su hipoteca, y convino en aceptar el condominio indiviso en pago total de dicho saldo. El consejo de familia, luego de ulterior deliberación y de oír al protutor, quien consideró que una venta en los términos indicados resultaba provechosa para los menores, aprobó unánimemente la venta efectuada a Oliver por dicha cantidad y sujeta a las condiciones especificadas en su oferta; entonces autorizó y ordenó al tutor que otorgara la correspondiente escritura de enajenación o adjudicación en las condiciones indicadas por el postor. La escritura de junio 15, otorgada por el tutor, fué una de compraventa o de dación en pago por la suma ofrecida por Oliver, o sea por $7,500, y en pago total del saldo del crédito hipotecario.

Un procedimiento anterior de testamentaría, de liquidación y partición de la herencia hubiera sido más preferible, más regular y más provechoso a los intereses de los menores, siempre que se hubiera podido inducir a Oliver a que dejara en suspenso el pleito en ejecución de hipoteca. No es probable que los menores hubieran derivado ningún beneficio de prolongados litigios ante la Corte Federal. Ni un procedimiento de testamentaría, ni la liquidación y distribución de la herencia, ni la partición de la hacienda Gripiñas eran un requisito anterior indispensable a la subasta autorizada, efectuada y aprobada por el consejo de familia o al otorgamiento por el tutor de la escritura de enajenación que el consejo de familia autorizó y ordenó. Para los fines de esta opinión asumiremos que en caso de que hubiera habido un procedimiento posterior de testamentaría o cualquier otro procedimiento para la liquidación, partición o distribución de la herencia, incluyendo la hacienda Gripiñas, Oliver se hubiera subrogado más o menos en los derechos y obligaciones de las personas de quienes adquirió. Sin embargo, ésta es cuestión que no ha sido discutida en los alegatos y no es necesario que especulemos más en torno a lo que hubiera podido hacerse o no en cualquier procedimiento ulterior. El importe total de la deuda pudo haber sido mucho menos de $60,000. Ésa fué la conclusión del juez de distrito. La hacienda Gripiñas pudo haber valido para aquel entonces de $80,000 a $100,000, según estimó el juez de la corte inferior. De ello no se deduce que la transacción en su totalidad fuera simulada o nula por falta de causa. Tal vez pudo estar viciada de fraude, conforme concluyó el juez de distrito. No era absolutamente nula.

El alegato de los apelados ha dejado de convencernos de que la enajenación de junio 15 y la transacción y compromiso de mayo 10, en lo que a los menores concierne, eran enteramente nulos por motivos que el juez de distrito resolvió equivalían a meras irregularidades.

El más joven de los herederos menores de edad tenía treinta años para la época en que se radicó la demanda. La contención de la demandada de que el recurso había prescrito por no haberse iniciado dentro de los cuatro años posteriores a la fecha en que dichos menores llegaron a su mayoridad, debió haber prosperado.

*Debe revocarse la sentencia apelada y declararse sin lugar la demanda.*

El Juez Asociado Sr. De Jesús no intervino.